UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREI STREJAC,

    Plaintiff,

v.

YOUTHCARE d/b/a ISIS HOUSE, *et al.*,

    Defendants.

Case No. C09-0498RSL

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO AMEND

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendants the City of Seattle and Mayor Greg Nickels (collectively, the "moving defendants"). After the moving defendants filed their motion, plaintiff filed a motion to amend his complaint to address some of the deficiencies identified in the pending dispositive motion. Plaintiff contends that he was wrongfully evicted from his housing at ISIS House, a transitional housing facility serving low-income youth in Seattle that is owned and managed by defendant Youthcare.

ORDER - 1

For the reasons set forth below, the Court grants in part defendants' motion and grants in part plaintiff's motion.[1]

## II. DISCUSSION

**A.    Background Facts.**

In August 2008, plaintiff moved into ISIS House. On March 19, 2009, Seattle police responded to two 911 calls from ISIS House. Seattle Police Officer Rory Smith met with both callers to learn each one's side of the story. The Youthcare housing manager, Cate Culpepper, informed Officer Smith that she was fearful of plaintiff due to his past threats and behavior, and that she wanted plaintiff removed from the premises. Culpepper informed Officer Smith that Youthcare had "shelter" status, and was not subject to the regular eviction process of Washington's Residential Landlord-Tenant Act ("RLTA"), RCW 59.18 *et seq*. Plaintiff denied that he was a danger, and informed the police that he had an attorney assisting him and would follow-up with a lawsuit. Officer Smith recommended that plaintiff leave the premises. Plaintiff contends that he felt compelled to leave, and he did so.

The next day, plaintiff filed a lawsuit in King County Superior Court alleging that he was wrongfully evicted. Plaintiff also filed a motion for a temporary restraining order, which was denied. Defendants subsequently removed the case to this Court.

**B.    Applicable Standards.**

The Court applies a liberal standard in evaluating motions to amend a complaint.

---

[1] Because the Court finds that this matter can be decided on the parties' memoranda, declarations, and exhibits, plaintiff's request for oral argument is denied.

ORDER - 2

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court considers four factors in deciding whether to grant leave to amend: "bad faith, undue delay, prejudice to the opposing party, and the futility of amendment." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994).

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

**C.    Evidentiary Issues and Request for a Continuance.**

As an initial matter, plaintiff has attached numerous documents to his memoranda

ORDER - 3

that are not property authenticated. Regarding his motion to amend, the unauthenticated documents include Exhibit B (titled, "YouthCare Young Adult Transitional Living Monthly Rental Agreement"), Exhibit C (titled, "YouthCare Young Adult Transitional Living Notice of Eviction"), and Exhibit F (titled, "YouthCare Transitional Living Programs"). Plaintiff simply attached the documents to his memorandum. He did not attach them to a declaration sworn by someone with personal knowledge that they are what they purport to be. Plaintiff attached similar documents to his memorandum opposing the moving defendants' motion for summary judgment and similarly failed to authenticate them. See Plaintiff's Opposition, Ex. 3, Ex. 7, and Ex. 8. The Court did not consider those documents because they are not properly authenticated.

Moreover, in opposition to the motion for summary judgment, plaintiff filed two declarations that are replete with hearsay. The Declaration of Marina Grabchuk, (Dkt. #21), includes numerous statements purportedly made to the declarant by third parties. The statements, which are offered for the truth of the matter asserted, are inadmissible hearsay. Similarly, plaintiff's counsel's statement that her client notified her that his telephone has been disconnected is inadmissible hearsay. First Declaration of Allison O-Malley-Jones, (Dkt. #21) at ¶ 3.

In response to the motion for summary judgment, plaintiff requested a continuance of "at least four months" because plaintiff's counsel has been unable to contact plaintiff to obtain a supporting affidavit from him. Plaintiff's Opposition at p. 2. In the interim, plaintiff's counsel was able to secure a declaration from plaintiff and filed it. Although the declaration was filed after the noting date of the motions, the Court considered it

ORDER - 4

because of plaintiff's circumstances.[2] The fact that plaintiff has now filed a declaration, which the Court has considered, obviates that basis for a continuance. The Court considers whether to grant plaintiff a continuance to pursue his Section 1983 claim below in the context of that claim.

**D.     Motion to Amend Claims Against ISIS House.**

Plaintiff has moved to file a second amended complaint, that, among other proposed changes, asserts that Youthcare d/b/a ISIS House violated unspecified provisions of the McKinney-Vento Act and U.S. Department of Housing and Urban Development ("HUD") regulations. Plaintiff's assertion of a violation of unspecified statutory and regulatory requirements is too vague to permit defendants to respond to it. Plaintiff has the burden of stating his claims; he cannot require defendants to comb through a lengthy statute and complicated regulations to attempt to find provisions that might apply. Because plaintiff has failed to identify applicable authority, he has not set forth the elements of any such claims. Nor has plaintiff shown that any particular provision in those authorities provides him with a private right of action. Plaintiff may move again later to add a claim based on the McKinney-Vento Act and/or HUD regulations if he is able to state a claim.

Although plaintiff does not argue the point in his motion, his second amended complaint also includes a new claim that Youthcare/ISIS House breached a contract with

---

[2] The Court also considered a late-filed declaration from plaintiff's counsel. Second Declaration of Allison O'Malley-Jones, (Dkt. #33). Even though the declaration was filed after the noting date for the motions, it appears that plaintiff did not receive the attachment – defendants' initial disclosures – in time to submit it with his response.

ORDER - 5

him. The second amended complaint, however, does not identify the contract allegedly breached. Accordingly, plaintiff's request to amend his complaint regarding his claims against Youthcare/ISIS House is denied.

**E.     Claims Against Mayor Nickels.**

Plaintiff's original complaint did not sue Seattle Mayor Greg Nickels. Plaintiff's amended complaint included Mayor Nickels in the caption, but was devoid of any allegations against him. Now, plaintiff seeks to amend his complaint to include a claim that Mayor Nickels "enforced" various policies, procedures, and practices that led to plaintiff's deprivation of rights. Plaintiff does not allege that Mayor Nickels personally participated in the actions against him, nor is there any other independent reason for naming him as a defendant. Rather, plaintiff contends that suing the Mayor in his official capacity is "tantamount to naming the City as a defendant in this case." Response to Motion for Summary Judgment at p. 21. Plaintiff has also sued the City, so any claim against Mayor Nickels as a proxy for the City is duplicative and unnecessary. Accordingly, plaintiff's request to amend his complaint to assert claims against Mayor Nickels is denied. The moving defendants' request for summary judgment on the claims against Mayor Nickels is granted.

**F.     Plaintiff's State Law Tort Claims.**

The moving defendants argue that plaintiff's state law tort claims against them must be dismissed because plaintiff failed to comply with the state's claims filing statute. Plaintiff undisputedly never filed a claim for damages with the City. He was required to do so within sixty days prior to filing his lawsuit. RCW 4.96.02; SMC 5.24.005; see also

ORDER - 6

Daggs v. City of Seattle, 110 Wn.2d 49 (1988). The statute requires strict compliance. See, e.g., Hintz v. Kitsap County, 92 Wn. App. 10 (1998). Plaintiff's failure to file a claim for damages against the City also bars his state law tort claims against City employees, including Mayor Nickels and any individually named police officers. Accordingly, the Court dismisses plaintiff's claims against the moving defendants for "illegal lockout," "irreparable harm" based on state law claims, and claims for "conversion/trespass to chattels."

**G.     Plaintiff's Section 1983 Claim.**

Plaintiff contends that the moving defendants assisted Youthcare in illegally removing him from his residence. Plaintiff alleges that in doing so, they violated plaintiff's constitutional right to due process of law prior to any deprivation of his property.

**1.     Section 1983 Claim Against the City.**

In order to establish liability against a municipality like the City under 42 U.S.C. § 1983, plaintiff must prove the following elements: (1) a municipal policy, practice, or custom existed, which (2) directly caused a violation of his constitutional rights. Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). As an initial matter, the moving defendants argue that plaintiff cannot establish a violation of his constitutional rights because he voluntarily left ISIS House. Plaintiff, however, disputes that assertion, which precludes summary judgment on the issue. The moving defendants also argue that plaintiff is precluded from arguing that he was wrongfully evicted because a King County Superior Court Commissioner ruled that plaintiff and Youthcare did not have a landlord-

ORDER - 7

tenant relationship. Declaration of Tobin Dale, (Dkt. #16), Ex. 1. However, that ruling is not the law of the case; plaintiff was in the process of seeking reconsideration of it when defendants removed this case. Even if his motion for reconsideration had been unsuccessful, plaintiff could have sought revision of the order. Defendants' removal ended that process, so the Court will not consider the order to be final. Moreover, even if the RLTA did not apply, plaintiff may have had common law rights to certain procedures prior to his eviction. See, e.g., Gray v. Pierce County Housing Auth., 123 Wn. App. 744, 757 (2004) (explaining that "no landlord, even one not governed by the RLTA, may ever use nonjudicial, self-help methods to remove a tenant.").[3] Youthcare has not yet filed a dispositive motion, so the record does not contain certain facts to permit the Court to determine whether Youthcare and plaintiff had a landlord-tenant relationship. If they did not, plaintiff's claims against Youthcare, the City, and its officers would be untenable.

Having found that the state court order does not bar plaintiff's claim, the Court turns to its merits and whether to permit plaintiff leave to amend. The City has established that it does not have a policy, practice, or custom to evict occupants who have a legal right to the premises. Declaration of John Diaz, (Dkt. #13) at ¶ 5. Plaintiff's amended complaint alleged that the Seattle Police Department "failed to adequately train and supervise John Doe [sic] 1, 2, and 3." Amended Complaint at ¶ 50. In his second amended complaint, plaintiff seeks to augment that claim with additional allegations, including that the City failed to properly supervise officers and train them in how to

---

[3] Other than relying on the state court ruling, the moving defendants do not argue that ISIS House was not a landlord or that plaintiff was not a tenant.

ORDER - 8

respond "when persons claiming to be residential tenants complain that the[y] are being unlawfully dispossessed of the rental premises." Proposed Second Amended Complaint at ¶ 51. Plaintiff contends that what happened in his circumstance is evidence of a failure to train. Although the "evidence" of a failure to train is thin, it is barely sufficient to overcome the contention that the amendment would be futile because plaintiff has not yet had an opportunity to conduct discovery and has requested time to do so. Plaintiff will be permitted to amend his complaint to augment his allegations of failure to train and supervise. The Court will permit him a sixty-day continuance to conduct discovery regarding the alleged failure to train and supervise and to file an amended response to the moving defendants' motion for summary judgment. If plaintiff is unable to obtain evidence of a failure to train, the Court will likely grant the motion for summary judgment on the Section 1983 claim.

Plaintiff, however, will not be permitted to amend his complaint to include allegations that the City failed to "train or prepare officers in how to seek legal advice in situations when they are unsure how to proceed," or "to provide access to legal counsel for officers who are unsure on how to proceed in situations they encounter while in the course of their work." Proposed Second Amended Complaint at ¶ 51. Those allegations are too vague to state a claim. Moreover, there is no evidence that the officers in this case were "unsure on how to proceed."

**2. Section 1983 Claim Against "John Doe" Defendants.**

The moving defendants contend that the Court should dismiss the claims against the John Doe defendants because "Doe" defendants are disfavored in federal court.

ORDER - 9

Because plaintiff has not yet had the opportunity to conduct discovery, his failure to provide specific names is understandable. Moreover, the moving defendants know who the Doe defendants are: they are Officer Smith and the other officers who accompanied him to ISIS House in response to plaintiff's 911 call. Any brief delay in naming them while plaintiff conducts discovery will not prejudice defendants.

Although naming "Doe" defendants is not inherently improper, plaintiff's allegations against them are conclusory and vague. Plaintiff is aware of what actions the Doe defendants allegedly took, even if he does not know their names. Without allegations about what each Doe defendant allegedly did, the allegations do not state a claim against each Doe defendant. Nor can the Court determine whether those defendants are entitled to qualified immunity. When he files his second amended complaint, plaintiff must specify facts and the alleged conduct of each Doe defendant. If plaintiff fails to do so, the Court may dismiss the claims against the Doe defendants.

As for Officer Smith, plaintiff has provided enough factual information to permit the Court to evaluate the claim. The moving defendants argue that plaintiff's Section 1983 claim against Officer Smith must be dismissed because (1) there was no constitutional violation, and (2) Officer Smith is entitled to qualified immunity. As set forth above, the Court cannot conclude at this point that there was no constitutional violation. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, __ U.S. __, 2009 U.S. LEXIS 591 at * 14 (Jan. 21, 2009) (internal

ORDER - 10

citation and quotation omitted).  Immunity questions should be resolved "at the earlier possible stage in litigation" to avoid subjecting government officials to the expense of defending against "insubstantial claims."  Id. at *15 (internal citations and quotations omitted).  The Supreme Court has identified a two-step test for resolving qualified immunity claims: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of the official's alleged misconduct.  Id. at *15-16 (citing Saucier v. Katz, 533 U.S. 194 (2001)).  In *Pearson*, the Supreme Court explained that the *Saucier* sequence is not mandatory, though it is often beneficial.  Id. at *22.  If an official reasonably believed that his or her conduct was lawful, qualified immunity applies.  See, e.g., Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001).  The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (internal citation and quotation omitted).  The Court must view the facts in the light most favorable to plaintiff.  Saucier, 533 U.S. at 201.

Plaintiff contends that Officer Smith is not entitled to qualified immunity because the right to remain in one's residence was well established at the time of the alleged eviction.  However, the Court must also consider whether Officer Smith reasonably believed that his conduct was lawful.  Officer Smith was told, and believed, that ISIS House had "shelter status."  Declaration of Officer Rory Smith, (Dkt. #15) at ¶ 5.  The house manager at ISIS House also told Officer Smith that the facility was not subject to the RLTA, that she had verified that fact with an attorney, and that ISIS House residents

ORDER - 11

are considered guests, not tenants. Id. Under the circumstances and based on the purpose and structure of ISIS House, it was reasonable for Officer Smith to believe that plaintiff did not have rights as a "tenant." Moreover, plaintiff does not dispute that guests in a shelter are not "tenants" and do not have the rights of tenancy. Finally, Officer Smith reasonably believed that plaintiff left ISIS House voluntarily. Id. at ¶¶ 7-11. Plaintiff informed Officer Smith that he was pursuing the "eviction issue" with his attorney and told the officer that he would spend the night at a shelter. For all of these reasons, the Court finds that Officer Smith is entitled to qualified immunity. Therefore, plaintiff will not be permitted to amend his complaint to specifically name Officer Smith as a defendant because plaintiff's claim against him is futile. The moving defendants' motion for summary judgment regarding the claim against Officer Smith is granted.

## III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART the moving defendants' motion for summary judgment (Dkt. #12) and dismisses plaintiff's state law tort claims against the moving defendants and his claims against Officer Smith and Mayor Nickels. The Court GRANTS IN PART AND DENIES IN PART plaintiff's motion to amend his complaint (Dkt. #20). Plaintiff may amend the allegations in his complaint to support his Section 1983 claim against the City. The remainder of plaintiff's motion to amend is denied.

Plaintiff must file a second amended complaint in the docket that complies with this order within twenty days. Within sixty days of this order, plaintiff may file a supplemental response to the moving defendants' motion for summary judgment that

ORDER - 12

addresses whether (1) the City is entitled to summary judgment on plaintiff's Section 1983 claim, (2) whether the allegations in the second amended complaint against the remaining Doe defendants are sufficient, and (3) whether the remaining Doe defendants are entitled to summary judgment. Within seven days after plaintiff files his supplemental response, the City may file a supplemental reply. Neither memorandum should exceed twelve pages.

DATED this 10th day of August, 2009.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER - 13