UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREI STREJAC,

Plaintiff,

v.

YOUTHCARE d/b/a ISIS HOUSE, *et al.*,

Defendants.

Case No. C09-0498RSL

ORDER GRANTING
YOUTHCARE'S MOTION FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendant YouthCare d/b/a ISIS House ("YouthCare"). Plaintiff contends that he was wrongfully evicted from his housing at ISIS House, a transitional housing facility serving low-income youth in Seattle that is owned and managed by defendant YouthCare.

The Court heard oral argument on this matter on November 18, 2009. For the reasons set forth below, the Court grants YouthCare's motion. However, because the Court has granted plaintiff's separate motion to amend his complaint to add a breach of

contract claim, this motion does not resolve the entire matter.

## II. DISCUSSION

### A. Background Facts.

YouthCare is a non-profit educational organization based in Seattle serving homeless youth. It provides services and educational programs including meals, hygiene, employment training, HIV/AIDS services, and schooling. YouthCare also provides temporary housing based on the individual's needs and capabilities.

In August 2008, plaintiff moved into ISIS House. ISIS stands for "Intervention, Support, Independence and Success."

YouthCare subsequently removed plaintiff from ISIS house because he allegedly failed to follow the rules and refused to sign a behavior contract. As a result, on March 19, 2009, the Youthcare housing manager, Cate Culpepper, informed plaintiff that he was "evicted" and asked him to leave the premises. Plaintiff refused to leave, called 9-1-1, and claims that the responding Seattle Police Department officers encouraged him to leave in violation of his civil rights.

The next day, plaintiff filed a lawsuit in King County Superior Court alleging that he was wrongfully evicted. Plaintiff also filed a motion for a temporary restraining order, which was denied. Defendants subsequently removed the case to this Court. Against YouthCare, plaintiff asserts claims under Washington's Residential Landlord-Tenant Act ("RLTA"), RCW 59.18 *et seq.*, under the common law for wrongful eviction, and for conversion/trespass to chattels. Plaintiff also asserted claims against the City of Seattle and several police officers; those claims have been dismissed.

ORDER GRANTING YOUTHCARE'S
MOTION FOR SUMMARY JUDGMENT - 2

**B.     Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

**C.     Analysis.**

To support his conversion/trespass to chattels claim, plaintiff contends that YouthCare wrongfully retained some of his possessions after he left ISIS House. Soon after that event, YouthCare's counsel sent plaintiff's counsel a letter offering plaintiff the chance to collect his belongings, and plaintiff subsequently did so. Declaration of

Allyson O'Malley-Jones, (Dkt. #60-2), Ex. 1. During oral argument, plaintiff's counsel stated that she is unaware of any items that were damaged or missing. Accordingly, the Court grants summary judgment on that claim.

Plaintiff's remaining claims turn on whether YouthCare was required to utilize the RLTA's eviction procedures prior to removing plaintiff from ISIS House. As an initial matter, plaintiff contends that YouthCare should be equitably estopped from asserting that he was not a tenant because its rental agreement referred to plaintiff as a "tenant." Declaration of Melinda Giovengo, (Dkt. #39) ("Giovengo Decl."), Ex. D. Plaintiff claims that based on the rental agreement, he believed that he was a tenant. However, equitable estoppel is an affirmative defense that must be pled, which plaintiff did not do. See, e.g., Heath v. Uraga, 106 Wn. App. 506, 516 (2001). Moreover, plaintiff has not shown that he relied on the rental agreement to his detriment. At the time he signed the agreement, plaintiff was homeless and YouthCare provided him with shelter. In addition, plaintiff was specifically notified that certain offenses could result in his immediate eviction, including the failure to be respectful of clients, staff, and other property. Giovengo Decl., Ex. G. That statement undermines plaintiff's professed belief that he was a tenant with the accompanying rights regarding evictions. For these reasons, plaintiff's equitable estoppel claim is untenable.

Similarly, the Court will not address plaintiff's contention that YouthCare's actions violated 24 C.F.R. § 882.511. Plaintiff has not asserted a claim under that regulation or under any federal law against YouthCare, and the Court denied plaintiff's previous request to amend his complaint to add such a claim.

ORDER GRANTING YOUTHCARE'S
MOTION FOR SUMMARY JUDGMENT - 4

Plaintiff also contends that YouthCare's conduct violated the RLTA. The RLTA defines a "tenant" as "any person who is entitled to occupy a dwelling unit primarily for living or dwelling purposes under a rental agreement." RCW 59.18.030(13). Plaintiff argues that he had a rental agreement and was entitled to occupy his room at ISIS house for sleeping. The statute, however, exempts the following living arrangements:

> Residence at an institution, whether public or private, where residence is merely incidental to detention or the provision of medical, religious, educational, recreational, or similar services, including but not limited to correctional facilities, licensed nursing homes, monasteries and convents, and hospitals.

RCW 59.18.040(1). Pursuant to the "or similar services," language, courts have applied the exemption to institutions not explicitly named in the statute. In <u>Sunrise Group Homes, Inc. v. Ferguson</u>, 55 Wn. App. 285 (1989), the exemption was applied to a group home for developmentally disabled adults that provided services to its clients. The court noted that the exemption "applies to any living arrangement where the tenant has a purpose for living there independent and apart from the basic requirements of shelter and amenities." <u>Sunrise Group Homes, Inc.</u>, 55 Wn. App. at 288; <u>id.</u> at 289 (explaining that the exemption does not require that the room and board be "trivial or unimportant;" rather, "it means that living there is subordinate or attendant to the institutional purpose"). In this case, plaintiff had important independent purposes for living at ISIS House beyond the provision of food and shelter: he received extensive social services and life skills support.

Plaintiff relies on *Gray v. Pierce County Housing Auth.*, 123 Wn. App. 744 (2004) to support his argument that ISIS House is not exempt. In *Gray*, the court found that

defendant was not an "institution" as contemplated by the regulation. Despite providing occasional classes for residents, defendant's institutional purpose was not to provide educational services; it was a municipal corporation that provided housing for low income residents. Gray, 123 Wn. App. at 758-59. In sharp contrast, in this case, YouthCare's only purpose was to provide services to homeless and runaway youth in Seattle/King County. Giovengo Decl., Ex. A. YouthCare provided extensive services to residents including meals, shelter referral, crisis intervention, hygiene services, case management, peer training and employment, HIV/AIDS services, educational services, and street outreach. Id. The provision of broader services to enable independent living distinguishes this case from those cited by plaintiff.[1] Finally, the Court notes that while this case was pending in King County Superior Court, a court commissioner found that this action was not governed by the RLTA. Dkt. #5, Ex. 10 at p. 1. Although that finding is not binding, the decision of a state court commissioner on an issue of state law is persuasive. For all of these reasons, the Court finds that YouthCare is exempted from the provisions of the RLTA.

Even if YouthCare is exempt from the RLTA, plaintiff contends that the common law prohibits using non-judicial means to evict tenants. Plaintiff's contention, however,

---

[1] See, e.g., Burke v. Oxford House of Ore. Chapter V, 341 Ore. 82 (2006) (finding that an Oregon entity that provided housing, but no social services, to recovering alcoholics was subject to Oregon's RLTA); Serreze v. YWCA of Western Mass., 30 Mass. App. Ct. 639, 644 (1991) (explaining that a transitional living program for women and their children escaping domestic violence constituted a landlord-tenant relationship; stating that unlike residents of some exempt entities, the participants in the program were capable of independent living).

ORDER GRANTING YOUTHCARE'S
MOTION FOR SUMMARY JUDGMENT - 6

begs the question of whether plaintiff was in fact a tenant. Regardless of whether plaintiff's claim arises under the RLTA or the common law, it is premised on the alleged existence of a landlord-tenant relationship. Certainly, plaintiff's relationship with YouthCare had some indicia of a tenancy, including a signed rental agreement, a room with a lock on the door, and the periodic payment of rent. However, the arrangement included many features not found in traditional landlord-tenant relationships: YouthCare refunded a portion of the rent to each resident, it subjected its tenants to what plaintiff describes as "deeply invasive rules,"[2] and it required residents to accept social work services from a "Life Skills Coach," a "Case Work Supervisor," and various YouthCare team members as conditions of living in the facility. YouthCare also required tenants to obtain employment within one month of moving in, to undergo mental and physical health examinations, and to provide YouthCare with access to their financial records. Limitations were placed on the use of residents' rooms: only limited overnight absences from the room were permitted, residents could not have visitors after 10:00 p.m., their room doors had to remain open while visitors were present, and quiet time had to be observed after midnight. Most importantly, YouthCare staff reserved the right "to enter the clients [sic] room at any time for any reason." Giovengo Decl., Ex. G (setting forth the right to "search the room and its contents" when "deemed necessary"). Those non-traditional terms and the unfettered right of entry support the finding that YouthCare is an

---

[2] For example, residents are prohibited from spending more than two evenings per week outside the facility, from engaging in any sexual activity in their rooms, and from loaning or borrowing money or property from other residents.

ORDER GRANTING YOUTHCARE'S
MOTION FOR SUMMARY JUDGMENT - 7

exempt institution and undermine plaintiff's contention that he was a tenant. A tenancy includes exclusive possession and use of the property. William Stoebuck, 17 Washington Practice: Real Estate: Property Law § 6.18 (1995)). In contrast, the absence of that right indicates that the individual may be a licensee or lodger. See, e.g., Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 103 Wn. App. 169, 183-84 (2000). Citing a well-known treatise, the *Lacey* court explained,

> No Washington decision defining "lodger" has been discovered, but other courts have found the following factors persuasive that persons are lodgers and not tenants: they shared food service, they shared bathroom facilities, the operator of the building had free access to their rooms, the operator provided maid service and linens, and the room was furnished.

Id. at 184 (citing William Stoebuck, 17 Washington Practice: Real Estate: Property Law § 6.18 at 319 (1995)). As a result, the *Lacey* court found that the nursing home residents were licensees rather than tenants. Although the *Lacey* case involved a tax issue rather than a landlord-tenant issue, its analysis of landlord-tenant law and its reasoning are on point. In this case, all of the factors identified by the *Lacey* court undermining tenant status are present: ISIS House residents shared food service and bathroom facilities, YouthCare had free access to residents' rooms, YouthCare provided maid service and linens, and the room was furnished. Accordingly, the Court finds that plaintiff was not a tenant. Therefore, YouthCare's actions did not violate the RLTA or the common law.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS YouthCare's motion for summary judgment (Dkt. #38) and dismisses plaintiff's claims asserted in the second amended complaint. Because the Court has granted plaintiff's separate motion to file a

ORDER GRANTING YOUTHCARE'S
MOTION FOR SUMMARY JUDGMENT - 8

third amended complaint to assert a breach of contract claim, this case will remain open.

DATED this 18th day of November, 2009.

/s/ Robert S. Lasnik
Robert S. Lasnik
United States District Judge

ORDER GRANTING YOUTHCARE'S
MOTION FOR SUMMARY JUDGMENT - 9